IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JENNIFER HAMEN et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | )   Case No. 1:16cv01394 |
| | ) |
| **THE ISLAMIC REPUBLIC OF IRAN et al.,** | ) |
| | ) |
| **Defendants.** | ) |

### SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DAMAGES

COMES NOW, Plaintiffs, by counsel, pursuant to the request of this Court made during the evidentiary hearing on July 26, 2018, *see* ECF No. 49 at 228, to file this supplemental brief comparing the damages requested in this case with damage awards in prior cases filed in this District under 28 U.S.C. § 1605A.

Plaintiffs have requested pain and suffering damages for Mark McAlister in the amount of $6.92 million ($10,000 per day for each day of captivity and $5 million for post-release pain and suffering), ECF No. 50 at 56, and a baseline solatium award for the McAlister family plaintiffs ($4 million for Crystal McAlister and $2.5 million for each of Mark's children). *Id.* at 60–61. For the Hamen family, plaintiffs have requested $5 million for pain and suffering, *Id.* at 54, and a fifty-percent upward departure for the Hamen family plaintiffs' solatium awards ($12 million for Jennifer Hamen and $7.5 million for each of the children). *Id.* at 63.[1]

---

[1] Evidence for economic damages based on lost wages and diminished earning capacity was also presented for both the Hamen family and Mark McAlister, but since economic damages are determined based on a case-by-case analysis of lost wages, earning capacity, personal consumption, etc., it is presumed that the Court was not requesting a comparison of the economic damages sought in this case with other FSIA cases. In addition, Plaintiffs requested $200 million in punitive damages for each family. ECF No. 50 at 70. Because punitive awards are unique to the conduct at issue, the particular state sponsor of terrorism involved, and whether prior cases arising out of the same facts have already penalized the same defendant for the same conduct, this analysis is also very case-specific and has not generated the same types of consistent ranges that are for the pain and suffering and solatium aspects of damages. Moreover, this is the first time the Islamic Republic of Iran's provision of material support and resources to the Houthi rebels in Yemen has been at issue, so any prior punitive damage awards would necessarily be based on

I.      **COUNSEL'S METHODOLOGY**

In order to be as broadly inclusive as possible, counsel performed a Westlaw search for all decisions from this Court that mentioned solatium damages and a country on the State Department's state sponsor of terrorism list. That search generated approximately 150 opinions. Counsel then narrowed the field to all such cases decided in the past five years on the understanding that this universe of cases would take into account trends developed in earlier case law and provide this Court with the requested guidance about consistency with prior opinions from this District.

In total, counsel reviewed twenty-five cases,[2] seven of which arose out of the embassy bombings in Tanzania and Kenya on August 7, 1998, three that arose out of the bombing of the United States Marine barracks in Beirut, Lebanon on October 23, 1983, six that involved terrorist attacks at various times in Israel (primarily by Hamas), six that involved kidnappings or hostage taking situations (including one in Israel), and the remaining three that involved an attack on a United States ship in Yemen, an attack at the Rome airport and a terrorist attack in Amman, Jordan.

II.     **PAIN AND SUFFERING**

    A.      <u>Framework for Terrorist Attacks and Suffering Leading to Death.</u>

This District has developed a standard framework for pain and suffering damages stemming from terrorist attacks. Recognizing a need for uniformity, this Court typically awards a baseline of $5 million to individuals who have suffered serious physical injuries from an attack,

---

Iranian support of other proxies. Accordingly, counsel has not included an analysis of punitive damages from prior FSIA cases in this memorandum.

[2] One of the cases reviewed, *Hekmati v. Islamic Republic of Iran,* 278 F. Supp. 3d 145 (D.D.C. 2017), did not include a claim for solatium damages and thus did not surface under the search terms used. However, counsel was aware of the case and its analysis of pain and suffering damages in hostage taking situations from prior research and therefore included *Hekmati* in the results.

such as compound fractures, serious flesh wounds, and scars from shrapnel, as well as lasting and sever psychological pain. *Warmai v. Republic of Sudan,* 60 F. Supp. 3d 84, 91 (D.D.C. 2014). Departures from this baseline have also been somewhat standardized, depending on the severity of the injuries. For plaintiffs who suffer momentarily prior to death for a period of up to a few hours, courts will typically award $1,000,000. *See Braun v. Islamic Republic of Iran,* 228 F. Supp. 3d 64, 84 (D.D.C. 2017). For victims who "suffer[ed] severe emotional injury without physical injury, this Court has typically awarded the victim $1.5 million." *Kaplan v. Hezbollah,* 213 F. Supp. 3d 27, 36 (D.D.C. 2016); *Owens v. Republic of Sudan,* 71 F. Supp. 3d 252, 259 (D.D.C 2014). Pain and suffering awards in the $1.5 million to $3 million range are appropriate where the victim "suffers severe emotional injury accompanied by relatively minor physical injuries." *Mwila v. Islamic Republic of Iran,* 33 F. Supp. 3d 36, 42 (D.D.C. 2014). And, of course, pain and suffering awards in excess of $5 million are appropriate in extraordinary circumstances. *See Upward Departures, supra.*

    B.    <u>Upward Departures.</u>

Nearly every case surveyed by counsel dealing with a terrorist attack (as opposed to those involving a lengthy detention) for the past five years used the framework described above and largely adhered to those ranges. Setting aside the hostage taking cases (which will be discussed in more detail below), four cases awarded pain and suffering above the benchmark $5 million:

- *Thuneibat v. Syrian Arab Republic,* 167 F. Supp. 3d 22, 53 (D.D.C. 2016) (family members present at the scene of an attack recovered for their own injuries and for watching loved one die);

- *Opati v. Republic of Sudan,* 60 F. Supp. 3d 68, 79 (D.D.C. 2014) (a blast victim with severe face and head burns awarded $7.5 million; a responder who contracted HIV also awarded $7.5 million);

- *Bluth v. Islamic Republic of Iran,* 203 F. Supp. 3d 1, 23 (D.D.C. 2016) (victim injured by grenade explosion with permanent hearing loss in one

    ear, pain from shrapnel, increased stress and anxiety, entitled to $6 million);

- *Cohen v. Islamic Republic of Iran,* 268 F. Supp. 3d 19, 25 (D.D.C. 2017) (bombing victim with badly injured eye and permanent disfigurement entitled to $7 million).

 C. <u>Downward Departures.</u>

Though the courts in FSIA cases frequently characterize any pain and suffering award of less than $5 million as a "downward departure," those awards nearly always depart along the lines mentioned above--$1 million for a very short time of survival; $1.5 million for severe mental suffering but no or minimal physical injuries; $1.5 to $3.0 million for severe mental suffering accompanied by some physical injuries; and $5 million for severe physical injuries and mental suffering. Only three cases of the twenty-five surveyed awarded damages below these standard ranges:

- *Kaplan v. Hezzbollah,* 213 F. Supp. 3d 27, 37 (D.D.C. 2016) (plaintiffs whose homes were impacted by Hezbollah attacks but who were not at home when the bombings occurred and were most concerned about property damages or lost wages--awarded $850,000);

- *Relvas v. Islamic Republic of Iran,* 2018 WL 1092445, at *2 (D.D.C. 2018) (those involved in recovery efforts for the Beirut barracks bombing but who were not in search and rescue and therefore witnessed only rubble, etc. as opposed to human remains awarded $750,000);

- *Buonocore v. Great Socialist People's Libyan Arab Jamahiriya,* 2013 WL 351546 at *23 (D.D.C. 2013) ($250,000 given to one of several victims in Rome airport attack, presumably with less severe injuries than the other bombing victims who received $1 million for brief suffering prior to death).

 D. <u>Framework for Hostage Taking Cases.</u>

Six cases decided in the past five years involved hostage taking and in three of those cases the victims, like Mark McAlister, survived. In each case, the court used the same methodology requested for Mr. McAlister, awarding the victim $10,000 per day for the time he

4

was in captivity and an additional lump sum for his post-captivity pain and suffering. *See Hekmati v. Islamic Republic of Iran,* 278 F. Supp. 3d 145, 164 (D.D.C. 2017); *Stansell v. Republic of Cuba,* 217 F. Supp. 3d 320, 346 (D.D.C 2016); *Moradi v. Islamic Republic of Iran,* 77 F. Supp. 3d 57, 69–70 (D.D.C. 2015).

*Moradi* involved facts similar to Mr. McAlister's circumstances. Moradi was imprisoned for 168 days; Mark was imprisoned for 192. *Moradi,* 77 F. Supp. 3d at 70. Both Moradi and Mark were fifty-seven years old when they were released. Both suffered from PTSD and depression, along with numerous other emotional and psychological issues. *Id.* at 62–63. *Moradi* was awarded $10,000 for each day of captivity and a lump sum of $5 million to compensate for post-relief pain and suffering, the same damages that Mark requests here.

In *Hekmati,* a second hostage taking case where the victim survived, an American-Iranian dual citizen was accused of being a spy and illegally imprisoned by Iran for four years under abusive conditions. *Hekmati,* 278 F. Supp. 3d at 145. Hekmati was thirty-two years old when he was finally released and had a life expectancy of over forty-five years. *Id.* at 164. The court awarded Mr. Hekmati $10,000 per day for each day of captivity and $10 million for his post-release suffering for a total pain and suffering award of $26.02 million. *Id.* at 164.

In *Stansell,* three Americans were captured by a terrorist group backed by Cuba when their plane was shot down over Columbia during a counter-narcotics surveillance flight. *Stansell,* 217 F. Supp. 3d at 329. They were held in captivity for 1,967 days under extremely abusive conditions. *Id.* at 346. Using the same formula as *Moradi* and *Hekmati,* the court awarded each of the men $10,000 per day for each day of their captivity ($19,670,000) and a lump sum award for future pain and suffering of $25 million each. *Id.* at 346.

In the three remaining hostage taking cases, the victims did not survive. One of the cases, *Fraenkel v. Islamic Republic of Iran,* 248 F. Supp. 3d 21 (D.D.C. 2017), though technically a hostage taking case, involved a very short period of captivity and the court applied the pain and suffering framework previously discussed in the bombing and terrorist attack cases. The victim in *Fraenkel* was a sixteen-year-old boy who was kidnapped after he got into an unknown vehicle while getting a ride home from boarding school. *Id.* at 27. A telephone call from one of the young men and the timing of the gun shots indicated that the boys were alive approximately thirty minutes from the time they entered the car until their death. *Id.* at 40–41. Citing the bombing cases discussed earlier, the court awarded the victim $1,000,000. *Id.*

*Foley v. Syrian Arab Republic,* 281 F. Supp. 3d 153 (D.D.C. 2017), involved the killing of three Americans by a terrorist organization led by Abu Mus'ab al-Zarqawi. One of the Americans, Laurence Michael Foley, Sr., was working for a relief agency and was shot seven times when he left his home one morning in Jordan. *Foley v. Syrian Arab Republic,* 249 F. Supp. 3d 186, 196 (D.D.C 2017) (the liability opinion). An autopsy report concluded that he was alive for several minutes before succumbing to the gunshot wounds, *id.* at 196, and the court ultimately awarded him $1 million. *Foley,* 281 F. Supp. 3d at 155 (the damages opinion).

A second American, Kristian Menchaca, was subjected to blunt force injuries, strangulation, and the removal of his eyes and tongue before his death. *Id.* at 157. He was serving in the Army in Iraq when he was captured by the Zarqawi terrorist group and tortured over the course of three days. *Foley,* 249 F. Supp. 3d at 198. The court awarded his estate $30 million for pain and suffering. *Foley,* 281 F. Supp. 3d at 157.

The third American killed by the Zarqawi terrorist group was Staff Sergeant Keith Matthew Maupin. His convoy was ambushed in Baghdad and afterward, his terrorist captors

released a brief video of Maupin. *Foley,* 249 F. Supp. 3d at 197. Maupin remained missing for approximately four years until his skeletal remains were discovered and identified. *Id.* An examination of those remains led to the conclusion that Maupin had died "shortly after he was captured" and that his jaw had been fractured by a forceful blow at the time of his death. *Id.* at 197. The court ultimately fixed his pain and suffering damages at $10 million. *Foley,* 281 F. Supp. 3d at 157–58.

The final hostage taking case involves a missionary in China who was abducted by North Korea agents and presumably imprisoned, tortured and killed in North Korea. *Kim v. Democratic People's Republic of Korea,* 87 F. Supp. 3d 286, 288 (D.D.C. 2015). There was no direct evidence of what happened to Rev. Kim after his kidnapping, and the district court initially dismissed the case because the witnesses could "not establish the severity of the treatment of Reverend Kim in particular, or that his treatment amounts to torture under the rigorous definition of that term adopted in the FISA" and instead only provided evidence about what "generally" happens in North Korean forced-labor camps to show that it "probably" happened to Rev. Kim. *Kim v. Democratic People's Republic of Korea,* 950 F. Supp.2d 29, 41–42 (D.D.C. 2013). The D.C. Circuit reversed. Citing the purpose of the FSIA—"to bring state sponsors of terrorism . . . to account for their respective practices"—and the fact that North Korea refused to appear in court and provide information, the appellate court held that the Kim family had produced enough evidence to satisfy FSIA's adjusted evidentiary requirements. *Kim v. Democratic People's Republic of Korea,* 774 F.3d 1044, 1047 (D.C. Cir. 2014). Evidence about North Korea's role in Rev. Kim's disappearance, and expert testimony about how North Korea typically treats its political prisoners, was enough to establish both torture and extrajudicial killing: "'[C]ommon experience tells us' that where a plaintiff has produced compelling, admissible evidence that the

regime abducted the victim and that it routinely tortures and kills the people it abducts, the courts can assume that the defendant probably tortured and killed the victim." *Id.* at 1049. On remand, the district court did not use the typical framework for awarding pain and suffering, economic and solatium damages, but instead awarded $15 million each to the son and brother of Rev. Kim. The court based the awards on the fact that it had been fifteen years since the reverend's disappearance and "approximately $1,000,000 per year" was "within the range of damage awards in similar cases." *Kim v. Democratic People's Republic of Korea,* 87 F. Supp. 3d 286, 290 (D.D.C. 2015).

### III. SOLATIUM DAMAGES

#### A. The Framework.

"This Court developed a standardized approach for FSIA intentional infliction of emotional distress, or solatium, claims in *Heiser v. Islamic Rep. of Iran*, 466 F. Supp.2d 229 (D.D.C. 2006)." *Relvas v. Islamic Rep. of Iran*, No. 1:14cv1752, 2018 WL 1092445, at *4 (D.D.C. Feb. 28, 2018). That framework was further solidified in *Peterson v. Islamic Rep. of Iran*, where the Court explained that under the "commonly accepted framework for solatium damages . . . spouses of deceased victims receive $8 million, parents of deceased victims receive $5 million, and siblings of deceased victims receive $2.5 million." *Owens v. Republic of Sudan*, 71 F. Supp. 3d 252, 260 (D.D.C. 2014). The children of deceased victims "should receive awards akin to those given to parents."[3] *Id.* In the event the victim survives, "[s]pouses receive $4 million, parents [and children] receive $2.5 million, and siblings receive $1.25 million." *Id.*

---

[3] Another line of judgments from this Court has awarded "[c]hildren of a deceased victim . . . an award of $3 million, [and] children of a surviving victim . . . $1.5 million." *Taylor v. Islamic Rep. of Iran*, 881 F. Supp. 2d 19, 23 (D.D.C. 2012) (citing *Stern v. Islamic Rep. of Iran*, 271 F. Supp. 2d 286, 301 (D.D.C. 2003)). Although this split of persuasive authority has not been definitively addressed by the Circuit Court of Appeals for the District of Columbia, the higher award has at least been tacitly approved. *See generally*, *Owens v. Republic of Sudan*, 864 F.3d 751 (D.C. Cir. 2017). Moreover, the D.C. Circuit has firmly stated that it is within "the wise discretion" of this Court to determine the appropriate amount of solatium because "different plaintiffs (even under FSIA) will prove different

Of the FSIA cases decided in the last five years, the following cases applied the basic *Heiser*/*Peterson* framework to all involved solatium plaintiffs without departure:

- *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 24 (D.D.C. 2016);
- *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 406 (D.D.C. 2015);
- *Moradi v. Islamic Republic of Iran*, 77 F. Supp. 3d 57, 73 (D.D.C. 2015);
- *Opati v. Republic of Sudan*, 60 F. Supp. 3d 68, 80 (D.D.C. 2014);
- *Onsongo v. Republic of Sudan*, 60 F. Supp. 3d 144, 151 (D.D.C. 2014);
- *Goldberg-Botvin v. Islamic Republic of Iran*, 938 F. Supp. 2d 1, 11 (D.D.C. 2013)
- *Buonocore v. Great Socialist People's Libyan Arab Jamahiriya*, No. 1:06cv727, 2013 WL 351546, at *29 (D.D.C. Jan. 29, 2013).

B.     Upward Departures.

Of the twenty-five[4] cases reviewed, ten involved grants of upward departures from the amounts suggested in *Heiser* and *Peterson* for at least one family member plaintiff. Two opinions did so without reference or recognition of the historical framework, *Foley v. Syrian Arab Republic*, 281 F. Supp. 3d 153, 156 (D.D.C. 2017); *Kim v. Democratic People's Republic of Korea*, 87 F. Supp. 3d 286, 290 (D.D.C. 2015), a method that Plaintiffs do not ask this Court to follow here.

When following *Heiser*, the Courts have enumerated multiple reasons for granting the upward departures. In some cases, a particularly close relationship with the victim compels a departure. *See Relvas*, 2018 WL 1092445, at *4 (20% upward departure for father-son-like

---

facts that may well (and should) result in different damage awards." *Fraenkel v. Islamic Republic of Iran, Ministry of Foreign Affairs, et al.*, 892 F.3d 348, 362 (D.C. Cir. 2018). Plaintiffs submit that this Court should apply that discretion to echo the reasonable conclusion that "children who lose parents are likely to suffer as much as parents who lose children." *See Owens*, 71 F. Supp. 3d at 260 (quoting *Mwila v. Islamic Rep. of Iran*, 33 F. Supp. 3d 36, 45 (D.D.C. 2014).

[4] As noted, one of the cases reviewed, *Hekmati v. Islamic Republic of Iran,* 278 F. Supp. 3d 145 (D.D.C. 2017), did not involve a claim for solatium damages.

9

relationship between siblings); *Mwila v. Islamic Republic of Iran*, 33 F. Supp. 3d 36, 45 (D.D.C. 2014) (60% upward departure due to a "closer-than-normal sibling relationship" between twins).

In other cases, the specific circumstances of the incident for the family member led to an increased award. *Cohen v. Islamic Republic of Iran*, 268 F. Supp. 3d 19, 26 (D.D.C. 2017) (80% upward departure due to injuries to multiple family members in the same attack); *Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 86 (D.D.C. 2017) (25% upward departure for parents who were present for the attack that killed their daughter); *Spencer v. Islamic Republic of Iran*, 71 F. Supp. 3d 23, 29 (D.D.C. 2014) (40% upward departure for parents who were told their son was dead, even though he had survived the attack).

In *Flanagan v. Islamic Republic of Iran*, the court applied a 25% upward enhancement to all family members upon a showing that the victim "was the center of his family," that his death "was devastating to his mother and brothers," and that the "violent nature in which he died further exacerbated their grief and mental suffering." 87 F. Supp. 3d 93, 118 (D.D.C. 2015).

In *Thuneibat v. Syrian Arab Republic*, plaintiffs from two families sought solatium damages for a suicide bombing. 167 F. Supp. 3d 22, 51 (D.D.C. 2016). The Court awarded one family the baseline *Heiser* award because, even though "they were all very close . . . they were able to cope with their difficult loss with the support of their family and the mental fortitude they enjoyed." *Id.* at 53. The other family was awarded a 25% upward departure due to evidence of "extreme emotional distress" and demonstrated changes to their personalities. *Id.* at 52–53.

In *Stansell v. Republic of Cuba*, the Court awarded the baseline $5,000,000 to each of the children of a deceased victim. 217 F. Supp. 3d 320, 347 (D.D.C. 2016). The Court also awarded $12,000,000 to the victim's widow, a 50% upward departure, based on "an unquestionably close relationship with her husband" after thirty years of marriage. *Id.* The award was also aggravated

10

by the initial lack of information surrounding her husband's death. The wife learned her husband was missing via voicemail, learned days later that he had been killed, and worked with the FBI for years to try and find out exactly what had happened. *Id.*

    C.    <u>Downward departures.</u>

Of those same twenty-five cases, eleven involved a downward departure from the *Heiser* framework for at least one family member plaintiff. One opinion did so by explicitly rejecting the prior framework. *Fraenkel v. Islamic Republic of Iran*, 248 F. Supp. 3d 21, 41 (D.D.C. 2017). Other cases reduced the total solatium damages awarded to the family members to ensure that they would not exceed the award of pain and suffering provided to the surviving victim of the terrorist act.[5] *Owens v. Republic of Sudan*, 71 F. Supp. 3d 252, 261 (D.D.C. 2014); *Khaliq v. Republic of Sudan*, 33 F. Supp. 3d 29, 34 (D.D.C. 2014); *Mwila*, 33 F. Supp. 3d at 45; *Spencer*, 71 F. Supp. 3d at 29. Plaintiffs are aware of no decisions that have applied this criterion in cases when the victim did not survive.

In *Kaplan v. Hezbollah*, this Court substantially reduced both the pain and suffering and the solatium damages awarded because the victims had only "emotional trauma and no physical injury" and also denied a claim for solatium by one family member "due to the complete absence" of evidence that she had suffered as a result her parents' injuries. 213 F. Supp. 3d 27, 38–39 (D.D.C. 2016).

In several other cases, this Court has departed downward from the *Heiser* framework when the evidence was either insufficient to establish the relationship between the family members or when the evidence positively established that the relationship was not a close one. *Relvas*, 2018 WL 1092445, at *4; *Worley v. Islamic Republic of Iran*, 177 F. Supp. 3d 283, 287

---

[5] This concept is not at issue in the present case unless the Court were to award Mark McAlister an amount for pain and suffering that is less than the $4,000,000 award requested on behalf of his spouse.

11

(D.D.C. 2016); *Wamai v. Republic of Sudan*, 60 F. Supp. 3d 84, 95 (D.D.C. 2014); *Amduso v. Republic of Sudan*, 61 F. Supp. 3d 42, 50 (D.D.C. 2014); *Spencer*, 71 F. Supp. 3d at 29. In each of these cases, the *Heiser* framework was discussed in detail and applied to most of the family member plaintiffs before discussing any departure for those specific plaintiffs whose evidence failed to establish a close relationship or emotional bond.

## IV. CONCLUSION

Plaintiffs request that this Court apply the two frameworks discussed above in reaching an award of $5,000,000 for the intense pain and suffering endured by John Hamen prior to death, and a pain and suffering award of $6,920,000 to Mark McAlister for his 192 days in captivity and the impact of that hardship on the remainder of his life.

Regarding solatium, Plaintiffs have presented sworn declarations and sworn testimony, explaining, in detail, the nature of the family relationships, both before and after the incident, and the specific damages caused to each family member plaintiff as a result. *See* ECF No. 32 at 24–31. All four of Mark McAlister's family members submitted sworn testimony to the Court (in addition to their declarations), either through appearance as a live witness or through video deposition testimony. In addition to telling their own stories before the Court, both Jennifer Hamen and Johann Hamen testified regarding the impact of these events on the other six Hamen children and Ms. Hamen provided letters from all but one of the youngest children to show, in their own words, the pain and difficulty of losing their father. *See* ECF No. 46-2 at 6–14. Based on this evidence, Plaintiffs reiterate their request for a baseline *Heiser* framework award as to the McAlister family plaintiffs and a fifty-percent upward departure from the *Heiser* framework for the Hamen family plaintiffs.

Respectfully submitted,

/s/ Kevin A. Hoffman
Kevin A. Hoffman (DC Bar No. 1044559)
Randy D. Singer *pro hac vice*
SINGER DAVIS, LLC
1209A Laskin Road
Virginia Beach, VA 23451
Phone: (757) 301-9995
Fax: (757) 233-1084
Email: kevin.hoffman@singerdavis.law
Email: randy.singer@singerdavis.law
*Counsel for Plaintiffs*

**Certificate of Service**

I hereby certify that on this, the 9th day of August 2018, copies of the foregoing were served on all registered parties via CM/ECF, concurrent with the filing of the same.

/s/ Kevin A. Hoffman
Kevin A. Hoffman (DC Bar No. 1044559)
Randy D. Singer *pro hac vice*
SINGER DAVIS, LLC
1209A Laskin Road
Virginia Beach, VA 23451
Phone: (757) 301-9995
Fax: (757) 233-1084
Email: kevin.hoffman@singerdavis.law
Email: randy.singer@singerdavis.law
*Counsel for Plaintiffs*